**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Scott Hislop, | No.  CV-25-04037-PHX-GMS (DMF) |
| Petitioner, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Respondents. | |

This matter is before the Court on its own review regarding the record materials filed with this Court in these proceedings.

**I.     PROCEDURAL POSTURE**

Petitioner James Scott Hislop ("Petitioner" and/or "Hislop") initiated these proceedings on October 21, 2025 (*see* Doc. 1 at 11),[1] by filing a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1).  The Court's Screening and Service Order regarding the Petition recounts:

Petitioner raises one ground for relief, alleging a violation of his Sixth

---

[1] The Petition was docketed by the Clerk of Court on October 28, 2025 (Doc. 1 at 1).  The Petition contains a declaration by Petitioner that he placed the Petition in the prison mailing system on October 21, 2025 (*Id.* at 11).  Under applicable law, October 21, 2025, is the operative filing date.  *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) ("A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."); *Melville v. Shinn*, 68 F.4th 1154, 1159 (9th Cir. 2023) (affirming that the prison mailbox rule "applies to pro se federal habeas petitions" on the date a petitioner signs, dates, and attests the petition was placed in the prison mailing system); *see also* Rule 3, Rules Governing Section 2254 Cases.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Amendment right to a speedy trial. Petitioner contends he presented this issue to the Arizona Court of Appeals and Arizona Supreme Court. The Court will require Respondents to answer the Petition. 28 U.S.C. § 2254(a).

(Doc. 5 at 1-2). In the Petition, Petitioner asserts that his right to a speedy trial was violated because the allegations against Petitioner were made in November 2014, the indictment against Petitioner was filed in July 2015, the state made only one attempt to serve Petitioner, Petitioner became aware of the case against him in October 2020, and a defense witness died in December 2019 (Doc. 1 at 6). In short, Petitioner's Sixth Amendment speedy trial claim is based on the approximately five-year delay between indictment and arrest (*Id.*).

Petitioner submitted several attachments with his Petition: the *Anders* brief filed with the Arizona Court of Appeals by Petitioner's appellate counsel on direct appeal (Doc. 1-1 at 1-10); documents reflecting a November 1, 2021, filing stamp of the Pinal County Superior Court on the first page which were apparently signed by Petitioner entitled "Affidavit of Demand for Dismissal" and "Notice of Attorneys Not Allowed to Testify" in which multiple arguments and issues are raised including an assertion of violation of Petitioner's federal constitutional speedy trial rights for the delay between indictment and arrest, citing *Barker v. Wingo*, 407 U.S. 514 (1972) (Doc. 1-1 at 11-20); the Arizona Court of Appeals' August 4, 2023, mandate in Petitioner's direct appeal (*Id.* at 21-23); and the Arizona Court of Appeals May 25, 2023, memorandum decision affirming Petitioner's convictions and sentences in Petitioner's direct appeal (*Id.* at 24-26).

On December 15, 2025, Respondents filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 8), in which Respondents concede that the Petition was timely filed and that Petitioner's Sixth Amendment speedy trial claim is properly exhausted (*Id.* at 4-5). Respondents argue that Petitioner's Sixth Amendment speedy trial claim fails on the merits because Petitioner has not shown that the Arizona Court of Appeals unreasonably applied clearly established federal law (*Id.* at 6-8). In their Answer, Respondents represent:

1

2    As required by Rule 5 of the Rules Governing 28 U.S.C. § 2254 cases,
3    Respondents submit as exhibits all relevant pleadings and orders from
     Hislop's state court proceedings.

4
     Respondents are in possession of the following transcripts: 09/03/2021 (oral
5    argument); 05/10/2022 (trial); 05/10/2022 (trial); 05/11/2022 (trial);
6    06/06/2022 (sentencing).

7    The following proceedings were recorded, but not transcribed: 07/27/2015
     (grand jury); 07/29/2016 (warrant review hearing); 07/28/2017 (warrant
8    review hearing); 07/27/2018 (warrant review hearing); 10/09/2020 (review
9    hearing); 10/30/2020 (arraignment); 11/13/2020 (arraignment); 01/04/2021
     (settlement conference); 03/03/2021 (settlement conference); 04/12/2021
10   (oral argument); 06/14/2021 (status conference); 11/01/2021 (status
11   conference); 02/07/2022 (pretrial conference); 02/14/2022 (trial setting);
     04/18/2022 (pretrial conference).
12
     (Doc. 8 at 1-2).
13
             With the Answer, Respondents attached the following:  the Arizona Court of
14
15   Appeals' May 25, 2023, memorandum decision on direct appeal affirming Petitioner's

16   convictions and sentences (*Id.* at 12-15 (Exhibit A)); Petitioner's *Anders* brief filed with

17   the Arizona Court of Appeals by Petitioner's appointed appellate counsel asking the court

18   of appeals to review the delay between Petitioner's indictment and arrest for fundamental

19   error (*Id.* at 16-26 (Exhibit B)); Petitioner's pro se supplemental brief filed with the Arizona

20   Court of Appeals on direct appeal which included argument that the delay between

21   indictment and arrest violated Petitioner's Sixth Amendment right to a speedy trial (*Id.* at

22   27-40 (Exhibit C)); Petitioner's September 2023 post-conviction relief ("PCR") notice

23   filed with the Pinal County Superior Court (*Id.* at 41-45 (Exhibit D)); the notice of

24   completion filed with the Pinal County Superior Court by Petitioner's appointed PCR

25   counsel averring that counsel found no colorable PCR claim (*Id.* at 46-58 (Exhibit E));

26   Petitioner's pro se PCR petition asserting among other things that Petitioner's right to a

27   speedy trial was violated by the delay between indictment and arrest (*Id.* at 59-85 (Exhibit

28   F)); the Pinal County Superior Court's order denying Petitioner's PCR petition (*Id.* at 86-

88 (Exhibit G)); Petitioner's petition for review filed with the Arizona Court of Appeals asking the court of appeals to review the trial court's denial of Petitioner's PCR petition regarding the delay between indictment and arrest (*Id.* at 89-91 (Exhibit H)); the Arizona Court of Appeals' July 7, 2025, order warning that Petitioner's petition for review would be dismissed if a compliant petition was not filed (*Id.* at 92-94 (Exhibit I)); the Arizona Court of Appeals' August 11, 2025, order dismissing Petitioner's petition for review because Petitioner did not file a petition in accordance with Arizona Rule of Criminal Procedure 32.16(c) (*Id.* at 95-97 (Exhibit J)); the July 27, 2015, indictment charging Petitioner with three counts of sexual conduct with a minor (*Id.* at 98-100 (Exhibit K)); the October 7, 2020, Pinal County Superior Court order detaining Petitioner (*Id.* at 101-102 (Exhibit L)); the Pinal County Superior Court's minute entry regarding Petitioner's November 13, 2020, arraignment (*Id.* at 103-106 (Exhibit M)); and the Pinal County Superior Court's minute entry regarding day one of Petitioner's jury trial held on May 10, 2022 (*Id.* at 107-111 (Exhibit N)).

Petitioner filed a timely Reply in support of the Petition (Doc. 9); there were no additional court records or other materials filed with the Reply's succinct two-page argument (*Id.*).

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 5 at 4).

## II.    SUMMARY OF PERTINENT STATE COURT PROCEEDINGS BASED ON RECORD PRESENTLY BEFORE THE COURT

Based on record materials presently before the Court, it appears that on July 27, 2015, a Pinal County grand jury indicted Petitioner on three counts of sexual conduct with a minor regarding alleged conduct in 2012 and 2013 (Doc. 8 at 99-100). The Arizona Court of Appeals recounted the factual basis underlying the indictment:

When Hislop's daughter was eleven years old, Hislop touched the inside and

outside of her genitals with his hands and touched "himself," and had her "grab" and "rub" his penis while she was naked.

(*Id.* at 14).  *State v. Hislop*, No. 2 CA-CR 2022-0097, 2023 WL 3645130, at *1 (Ariz. Ct. App. May 25, 2023).[2]

It appears that Petitioner was arrested on the indictment charges in early October 2020 and ordered held in custody pending trial (Doc. 8 at 101-102).  On November 13, 2020, Petitioner was arraigned and entered a plea of not guilty (*Id.* at 104-06).  As recounted by the Arizona Court of Appeals:

> At the final pretrial conference held on February 7, 2022, the trial court expressly found that the parties' stipulation of "Agreement as to Rule 8[, Ariz. R. Crim. P.,] Calculation," entered on November 12, 2021 was binding upon the parties. Despite Hislop's statement in February that he did not want to waive Rule 8 time, multiple pleadings in the record establish that he had done so. The stipulation noted the exclusion of the period of time between March 18, 2020 and March 31, 2021 from the Rule 8 calculation, pursuant to Ariz. Sup. Ct. Admin. Order No. 2021-109 (July 14, 2021), due to the COVID-19 pandemic. The court also found that, due to "extraordinary circumstances" relating to the pending change of defense counsel, delay was "indispensable to the interest of justice," the trial scheduled for February 22, 2022 was vacated, and time was "excluded." And, at the February 14, 2022 trial-setting conference, the court additionally found that, based on the parties' previous stipulation, Hislop had "knowing[ly], intelligently and voluntarily waived the potential delay from March 29, 2022 to the proposed trial date of May 10, 2022."

(Doc. 8 at 14-15).  *Hislop*, 2023 WL 3645130, at *1.

Following the May 2022 jury trial, Petitioner was convicted of three counts of sexual conduct with a minor (Doc. 8 at 14).  *Hislop*, 2023 WL 3645130, at *1.  The trial court sentenced Petitioner to consecutive terms of twenty years' imprisonment on counts one and three and a life term of imprisonment on count two without the possibility of

---

[2] The state court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct . . . ."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

1  release until Petitioner had served thirty-five years (Doc. 8 at 14). *Hislop*, 2023 WL

2  3645130, at *1.

3        In Petitioner's direct appeal, Petitioner's appellate counsel filed with the Arizona

4  Court of Appeals a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), averring

5  that appellate counsel had searched the record and found no issue that is not frivolous (*Id.*

6  at 17-26).  Nevertheless, Petitioner's appellate counsel noted that fundamental error review

7  may be warranted on an issue that appellate counsel reported was never raised in the trial

8  court—whether Petitioner's Sixth Amendment right to a speedy trial as set forth under

9  *Barker v. Wingo*, 407 U.S. 514 (1972), and *State v. Broughton*, 156 Ariz. 394, 752 P.2d

10  483 (1988), was violated due to the delay between Petitioner's July 27, 2015, indictment

11  and his November 13, 2020, arraignment (*Id.* at 23-24; *see also id.* at 19).

12        Despite appellate counsel's statement in the *Anders* brief that the Sixth Amendment

13  speedy trial issue was never raised in the trial court, it does appear the issue was raised in

14  the trial court.  Noteworthy is that attached to the Petition are documents reflecting a

15  November 1, 2021, filing stamp of the Pinal County Superior Court on the first page which

16  were apparently signed by Petitioner entitled "Affidavit of Demand for Dismissal" and

17  "Notice of Attorneys Not Allowed to Testify" in which multiple arguments and issues are

18  raised including an assertion of violation of Petitioner's federal constitutional speedy trial

19  rights for the delay between indictment and arrest, citing *Barker v. Wingo*, 407 U.S. 514

20  (1972) (Doc. 1-1 at 11-20).  As later recounted by Petitioner's PCR counsel in describing

21  the underlying trial court proceedings:

22
23      On or around November 1, 2021, Petitioner filed, *pro se*, an "Affidavit of
    Demand for Dismissal" pursuant to the 6th Amendment citing "fraud in the
24      contract" and failure of due process of law, among other things.  The State
    subsequently filed a Rule 8 calculation and a hearing was held.  The Court
25      found that the Stipulation regarding Rule 8 calculations was binding and that
    the jury trial would start within the Rule 8 timeframe.  Petitioner's counsel,
26      Morgan Alexander was withdrawn and new counsel was appointed.

27  (Doc. 8 at 49-50).   Nevertheless, no related state court records were provided by

28

1 Respondents with their Answer (Doc. 8), not even the stipulation regarding Rule 8

2 calculations referred to by PCR counsel (*Id.* at 49-50) and referenced by the Arizona Court

3 of Appeals in affirming Petitioner's convictions and sentences (Doc. 8 at 14-15). *Hislop*,

4 2023 WL 3645130, at *1.

5        After his appellate counsel filed an *Anders* brief with the Arizona Court of Appeals

6 in Petitioner's direct appeal, Petitioner filed a pro se supplemental brief asserting several

7 violations of the Arizona Rules of Criminal Procedure and violation of his Sixth

8 Amendment right to a speedy trial (Doc. 8 at 28-40). In support of his Sixth Amendment

9 speedy trial argument, Petitioner cited *Doggett v. United States*, 505 U.S. 647 (1992),

10 which Petitioner accurately described as having held that the "delay of 8½ years between

11 indictment and arrest resulting from government's negligent failure to seek accused

12 violated [Doggett's] constitutional right to speedy trial despite lack of showing of actual

13 prejudice as government's egregious persistence in failing to prosecute was sufficient to

14 warrant relief without showing of particularized trial prejudice" (*Id.* at 32, 37).

15        On May 25, 2023, the Arizona Court of Appeals affirmed Petitioner's convictions

16 and sentences (*Id.* at 13-15). *Hislop*, 2023 WL 3645130, at *1-2. Regarding speedy trial

17 rights, the Arizona Court of Appeals reasoned:

18
19     ¶3 Insofar as Hislop claims his speedy trial rights were violated, the record
does not support his claim. At the final pretrial conference held on February

20 7, 2022, the trial court expressly found that the parties' stipulation of
"Agreement as to Rule 8[, Ariz. R. Crim. P.,] Calculation," entered on

21 November 12, 2021 was binding upon the parties. Despite Hislop's statement
in February that he did not want to waive Rule 8 time, multiple pleadings in

22 the record establish that he had done so. The stipulation noted the exclusion
of the period of time between March 18, 2020 and March 31, 2021 from the

23 Rule 8 calculation, pursuant to Ariz. Sup. Ct. Admin. Order No. 2021-109
(July 14, 2021), due to the COVID-19 pandemic. The court also found that,

24 due to "extraordinary circumstances" relating to the pending change of
defense counsel, delay was "indispensable to the interest of justice," the trial

25 scheduled for February 22, 2022 was vacated, and time was "excluded." And,

26 at the February 14, 2022 trial-setting conference, the court additionally found
that, based on the parties' previous stipulation, Hislop had "knowing[ly],

27

28

1

2

3

> intelligently and voluntarily waived the potential delay from March 29, 2022 to the proposed trial date of May 10, 2022." We find unpersuasive Hislop's assertion that the "COVID pandemic . . . should be a moot condition since this was a 2015 case."

4

5

6

7

8

9

10

11

> ¶4 We also reject Hislop's argument that he is entitled to relief because of the delay between his indictment and his arraignment. Rule 14.2(b), Ariz. R. Crim. P., provides, "If the court cannot hold the arraignment within the time specified . . . because the defendant has not yet been arrested or summoned, or is in custody elsewhere, the court must hold the arraignment as soon as possible after those time periods." Not only has Hislop failed to provide support from the record for his apparent argument that subsection (b) does not apply here, but he has not established that he was prejudiced by the timing of the arraignment. *See State v. Leenhouts*, 218 Ariz. 346, ¶ 9 (2008) ("Prejudice exists if the failure to arraign a defendant deprives him or her of notice of the charges and thereby deprives the defendant of the opportunity to defend against those charges.").

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(Doc. 8 at 14-15). *Hislop*, 2023 WL 3645130, at *1-2. Further, the court of appeals stated that its independent review of the record did not reveal any fundamental, prejudicial error in Petitioner's case (Doc. 8 at 15). *Hislop*, 2023 WL 3645130, at *2. The Arizona Court of Appeals did not cite or discuss *Doggett v. United States*, 505 U.S. 647 (1992), *Barker v. Wingo*, 407 U.S. 514 (1972), or the factors set forth in *Barker* in rendering decision in Petitioner's direct appeal (Doc. 8 at 13-15). *Hislop*, 2023 WL 3645130, at *1-2. It also appears that none of the state court cases cited in the decision reference or discuss the *Barker* factors. Moreover, it is not clear that Rule 8 or Rule 14.2(b) would be dispositive of Petitioner's argument that he was deprived of his Sixth Amendment constitutional speedy trial right by the delay between indictment and arrest as nothing in the record suggests that Petitioner was in custody between indictment and arrest on the indictment.[3] *See* Ariz. R. Crim. P. 8 generally; *see also* Ariz. R. Crim. P. 8.3. Pertinent to the record issues addressed herein, Respondents did not include as part of the record provided with their Answer (Doc. 8) the "multiple pleadings in the record establish that" Petitioner

27

28

---

[3] Publicly available records reflect that Petitioner was not in Arizona Department of Corrections, Rehabilitation & Reentry custody during the relevant time period. *See* https://corrections.az.gov/inmate-data-search.

1  waived Rule 8 time referenced by the Arizona Court of Appeals (Doc. 8 at 15).  *Hislop*,

2  2023 WL 3645130, at *1.

3        In his Petition, Petitioner asserts that he filed a petition for review with the Arizona

4  Supreme Court on February 12, 2024, and the supreme court dismissed the petition as

5  untimely (Doc. 1 at 3).

6        Additionally, the record presently before this Court reflects that Petitioner initiated

7  PCR proceedings by filing a pro per PCR notice with the trial court (Doc. 8 at 42-45).

8  Following a review of the record, appointed PCR counsel filed a notice of completion

9  averring that counsel found no colorable claims for post-conviction relief (*Id.* at 47-56).

10  Petitioner thereafter filed a timely pro per PCR petition in which Petitioner again argued

11  that his federal constitutional Sixth Amendment speedy trial rights were violated by the

12  delay between indictment and arrest (*Id.* at 60-65).  After the state filed a response and

13  Petitioner filed a reply, the trial court denied Petitioner's pro per PCR petition (*Id.* at 87).

14  On June 24, 2025, Petitioner filed a petition for review with the Arizona Court of Appeals

15  (*Id.* at 90-91).  On July 7, 2025, the court of appeals issued an order notifying Petitioner

16  that his petition for review did not comply with Arizona Rule of Criminal Procedure

17  32.16(c) and granting Petitioner leave to refile his petition for review in compliance with

18  Rule 32.16(c) no later than August 6, 2025 (*Id.* at 93).  Petitioner did not refile his petition

19  for review, and the Arizona Court of Appeals dismissed the proceedings on August 11,

20  2025 (*Id.* at 96).

21  **III.     SUMMARY OF LEGAL FRAMEWORK**

22        **A.  Rules Regarding Provision of State Court Record Materials**

23        In relevant part, Rule 5 of the Rules Governing Section 2254 Cases ("Rule 5")

24  provides:

25        **(c) Contents: Transcripts.** The answer must also indicate what transcripts
26        (of pretrial, trial, sentencing, or post-conviction proceedings) are available,
      when they can be furnished, and what proceedings have been recorded but
27        not transcribed. The respondent must attach to the answer parts of the
28        transcript that the respondent considers relevant. The judge may order that

the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.

**(d) Contents: Briefs on Appeal and Opinions.** The respondent must also file with the answer a copy of:

(1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding;

(2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and

(3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.

In addition, Rule 7, Rules Governing Section 2254 Cases, provides:

**(a) In General.** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

**(b) Types of Materials.** The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

**(c) Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Further, Rule 8(b), Rules Governing Section 2254 Cases, provides:

**(a) Determining Whether to Hold a Hearing.** If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted

*See also* Rule 10, Rules Governing Section 2254 Cases ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636.").

///

1

### B. Merits Review Standard

On habeas review of claims adjudicated on the merits in a state court proceeding, relief can only be granted if Petitioner demonstrates that the state court's adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "'highly deferential standard for evaluating state-court rulings' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal citation omitted) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). A federal court "look[s] to the last reasoned state court decision" to make a determination on a claim pursuant to Section 2254(d). *White v. Ryan*, 895 F.3d 641, 665 (9th Cir. 2018) (citing *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing law set forth in Supreme Court precedent, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" prong of Section 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under Section 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409.

1    To make a determination pursuant to Section 2254(d)(1), the Court first identifies

2  the "clearly established Federal law," if any, that governs the sufficiency of the claims on

3  habeas review.  "Clearly established" federal law consists of the holdings of the United

4  States Supreme Court which existed at the time the petitioner's state court conviction

5  became final.  *Id.* at 412.  The Supreme Court has emphasized that "an *unreasonable*

6  application of federal law is different from an *incorrect* or *erroneous* application of federal

7  law."  *Id.* (emphasis in original).  Under AEDPA, "[a] state court's determination that a

8  claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

9  disagree' on the correctness of the state court's decision."  *Richter*, 562 U.S. at 101.

10  Accordingly, to obtain habeas relief from this Court, the petitioner "must show far more

11  than clear error."  *Klein v. Martin*, No. 25–51, 2026 WL 189976, at *4 (U.S. Jan. 26, 2026)

12  (internal quotation marks omitted) (quoting *Richter*, 562 U.S. at 102).  The petitioner must

13  "establish that the state court 'blunder[ed] so badly that every fairminded jurist would

14  disagree' with the decision."  *Id.* (quoting *Mays v. Hines*, 592 U.S. 385, 392 (2021)).

15    Regarding Section 2254(d)(2), a state court decision "based on a factual

16  determination will not be overturned on factual grounds unless objectively unreasonable in

17  light of the evidence presented in the state-court proceeding."  *Miller-El v. Cockrell*, 537

18  U.S. 322, 340 (2003).  A "state-court factual determination is not unreasonable merely

19  because the federal habeas court would have reached a different conclusion in the first

20  instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  As the Ninth Circuit has explained,

21  to find that a factual determination is unreasonable under Section 2254(d)(2), the court

22  must be "convinced that an appellate panel, applying the normal standards of appellate

23  review, could not reasonably conclude that the finding is supported by the record."  *Taylor*

24  *v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds by Murray v.*

25  *Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).  "This is a daunting standard—one that will

26  be satisfied in relatively few cases."  *Id.*

27    The petitioner bears the burden of rebutting the state court's factual findings "by

28  clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The Supreme Court has not

1   defined the precise relationship between Section 2254(d)(2) and Section 2254(e)(1) but has

2   clarified "that a state-court factual determination is not unreasonable merely because the

3   federal habeas court would have reached a different conclusion in the first instance."  *See*

4   *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (citing *Wood*, 558 U.S. at 293, 301).

5         Where no state court has ruled on the merits of a petitioner's claim, this Court will

6   review the claim de novo.  *Cone v. Bell*, 556 U.S. 449, 472 (2009); *see also Pirtle v.*

7   *Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

8                  **C. U.S. Constitution Sixth Amendment Speedy Trial Right**

9         The Sixth Amendment guarantees an accused defendant the right to a speedy trial.

10  *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *see also* U.S. Const. amend. VI ("In all

11  criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").

12  The Supreme Court of the United States has described the Sixth Amendment speedy trial

13  right as "amorphous, slippery, and necessarily relative."  *Vermont v. Brillon*, 556 U.S. 81,

14  89 (2009) (internal quotation marks omitted) (quoting *Barker*, 407 U.S. at 522).

15  Accordingly, the Supreme Court has identified four factors courts must consider in

16  evaluating a Sixth Amendment speedy trial claim: (1) the length of delay, (2) the reason

17  for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.

18  *Barker*, 407 U.S. at 530.[4]   No one factor is determinative; all factors and relevant

19  circumstances must be considered in the court's analysis.  *Id.*

20        The length of delay factor operates as a "triggering mechanism" such that "[u]ntil

21  there is some delay which is presumptively prejudicial, there is no necessity for inquiry

22  into the other factors . . . ."  *Id.*  The Supreme Court has not set a bright-line rule on what

23  _____

24  [4] Article II, section 24 of the Arizona Constitution contains a speedy trial guarantee largely identical to the Sixth Amendment's guarantee.  *Compare* Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have . . . a speedy public trial"), *with* U.S. Const.

25  amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .").  The Arizona Supreme Court applies the factors outlined in *Barker* to

26  analyze a speedy trial claim under both the Arizona Constitution and the United States Constitution.  *See State v. Schaaf*, 169 Ariz. 323, 327, 819 P.2d 909, 913 (1991); *see also*

27  *State v. Burkett*, 179 Ariz. 109, 114, 876 P.2d 1144, 1149 (Ct. App. 1993) ("Arizona Supreme Court applies the standard found in *Barker v. Wingo* to analyze a speedy trial

28  claim" (citing *Schaaf*, 169 Ariz. at 327, 819 P.2d at 913)).

constitutes a presumptively prejudicial delay but rather has instructed that "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530-31.  By way of example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531.

As to the second factor, courts consider "whether the government or the criminal defendant is more to blame for the delay." *Doggett v. United States*, 505 U.S. 647, 651 (1992); *see Barker*, 407 U.S. at 531.  For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Barker*, 407 U.S. at 531.  On the other hand, a "neutral reason such as negligence or overcrowded courts should be weighted less heavily" and "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

Third, courts consider whether and to what extent the defendant asserted his right. *Id.*  The defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight" but a defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.*

Finally, courts must consider prejudice to the defendant.  *Id.*  In the prejudice analysis the Supreme Court has identified interests of the defendant that must be considered: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* (citations omitted).  The Supreme Court instructed that "the most serious [interest] is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious." *Id.*

## IV.    RECORD SUPPLEMENTATION

Upon review, the Court will order supplementation of the record before this Court in order to assist the Court in evaluating Petitioner's habeas claim and Respondents' arguments in opposition.

Without reviewing the state court record materials, it is difficult to discern the breadth of additional state court record materials pertinent to the Sixth Amendment speedy trial right issues.  Nevertheless, it is clear that at least some supplementation is needed.  Respondents argue the merits of Petitioner's Sixth Amendment speedy trial claim and contend that Petitioner's "assertion of his rights was equivocal at best" and that Petitioner "agreed to some of the delay through his stipulations and waivers" (Doc. 8 at 8).  Yet, Respondents did not attach to their Answer any trial court filings or transcripts of pretrial hearings regarding Petitioner's agreement to the state's Rule 8, Ariz. R. Crim. P., calculation.  Further, a Petition attachment appears to indicate that Petitioner himself raised the constitutional speedy trial issue in the trial court in November 2021 and there was a hearing regarding such apparently after additional filings (Doc. 1-1 at 11, 13-14; *see also* Doc. 8 at 15, 49-50).  Also, Respondents argue regarding the merits of Petitioner's Sixth Amendment speedy trial claim that "[t]here is certainly no evidence that the State was negligent in its efforts to locate Hislop" (Doc. 8 at 8).  Nevertheless, Respondents did not furnish transcripts for the Court's review of law enforcement trial or other testimony (*see id.* at 22, 111).  Also noteworthy is that the record reflects that the trial court denied Petitioner's PCR petition which raised the speedy trial issue after considering Petitioner's pro se PCR petition filed April 3, 2024; the state's response filed December 13, 2024; and Petitioner's reply filed January 13, 2025 (*Id.* at 87).  Respondents have furnished a copy of Petitioner's pro se PCR petition (*Id.* at 60-85), but Respondents have not filed copies of the state's response and Petitioner's reply (*see id.* at 11).  Further, it appears that any incarceration of Petitioner during the relevant timeframe is pertinent to the issues under consideration in this matter.

Thus, the Court will enter orders for record supplementation, recognizing that the orders may be broader than ultimately needed to decide the issues before the Court.[5]

---

[5] Nevertheless, specifically ordering compliance with Rule 5 of the Rules Governing Section 2254 Cases is not overly broad; in fact, such order is redundant to the Court's previous order (Doc. 5 at 4, lines 7-8).

1  Presently, this broader approach appears to be appropriate.  After record supplementation,

2  the Court will enter a briefing schedule allowing the parties opportunity to supplement their

3  briefing in this matter.

4          Accordingly,

5          **IT IS HEREBY ORDERED** that Respondents shall file supplemental record

6  materials as stated herein **no later than 45 days after the date of this Order**.

7          **IT IS FURTHER ORDERED** that Respondents shall fully comply with Rule 5 of

8  the Rules Governing Section 2254 Cases.

9          **IT IS FURTHER ORDERED** that Respondents shall file with this Court and

10 provide a copy of the filing to Petitioner the below materials to the extent they are not

11 sealed or otherwise protected from disclosure:

12     1.  All state court record materials pertinent to Petitioner's habeas claim, whether

13         in the trial or appellate court.

14     2.  All minute entries from the state trial court proceedings.

15     3.  The transcripts in Respondents' possession, which are the following transcripts:

16         09/03/2021 (oral argument); 05/10/2022 (trial); 05/10/2022 (trial); 05/11/2022

17         (trial); 06/06/2022 (sentencing).

18     4.  All materials filed on November 1, 2021, in the trial court and other record

19         materials relating thereto (*see* Doc. 1 at 11-20) including the stipulation

20         referenced in the Arizona Court of Appeals decision (Doc. 8 at 14-15).

21     5.  Transcriptions of the following proceedings, which Respondents report were

22         recorded, but not transcribed: 07/29/2016 (warrant review hearing); 07/28/2017

23         (warrant review hearing); 07/27/2018 (warrant review hearing); 10/09/2020

24         (review hearing); 10/30/2020 (arraignment); 11/13/2020 (arraignment);

25         01/04/2021 (settlement conference); 03/03/2021 (settlement conference);

26         04/12/2021 (oral argument); 06/14/2021 (status conference); 11/01/2021 (status

27         conference); 02/07/2022 (pretrial conference); 02/14/2022 (trial setting);

28         04/18/2022 (pretrial conference).

6. Minute entries, orders, motions, notices, and other filings relating to the following proceedings: 07/29/2016 (warrant review hearing); 07/28/2017 (warrant review hearing); 07/27/2018 (warrant review hearing); 10/09/2020 (review hearing); 10/30/2020 (arraignment); 11/13/2020 (arraignment); 01/04/2021 (settlement conference); 03/03/2021 (settlement conference); 04/12/2021 (oral argument); 06/14/2021 (status conference); 11/01/2021 (status conference); 02/07/2022 (pretrial conference); 02/14/2022 (trial setting); 04/18/2022 (pretrial conference).

7. Any additional briefing in Petitioner's direct appeal not previously filed as part of the Answer.

8. All state court record materials in Petitioner's PCR proceedings not previously filed as part of the Answer, whether in the trial or appellate court.

9. A record of Petitioner's incarceration dates in Arizona Department of Corrections, Reentry & Rehabilitation for relevant timeframes.

**IT IS FURTHER ORDERED** that Respondents shall arrange and pay for the transcription of the un-transcribed hearings above and shall furnish copies of the transcripts pursuant to Rule 5(c), Rules Governing Section 2254 Cases; if Respondents are unable to furnish a relevant transcript, Respondents must file a status report explaining their efforts to obtain the transcript and why their efforts were unsuccessful **no later than 45 days after the date of this Order**.

**IT IS FURTHER ORDERED** that to the extent that any of the materials referenced above appear pertinent to the issues in these proceedings but are sealed and/or otherwise protected, Respondents shall file a notice and/or motion with the Court identifying the materials and suggesting a procedure to protect the interests at stake **no later than 45 days after the date of this Order**.

///

///

///

1    **IT IS FURTHER ORDERED** that to the extent it appears that the grand jury

2    transcript is pertinent to the issues in these proceedings, Respondents shall file a notice

3    and/or motion with the Court stating such and suggesting a procedure to protect the

4    interests at stake **no later than 45 days after the date of this Order**.

5    Dated this 5th day of February, 2026.

6

7

8    _____

9    Honorable Deborah M. Fine
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28